IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ira Riggs,<br><br>         Movant<br><br>vs.<br><br>United States of America,<br><br>         Respondent. | No. CR-03-681-PCT-DGC<br>     CV-07-8005-PCT-DGC (LOA)<br><br>**REPORT AND RECOMMENDATION** |

This matter arises on Movant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (docket # 121[1]) Respondent has filed a Response (docket # 125) to which Movant has not replied and the deadline has passed.

**I. Factual and Procedural Background**

The following incident gave rise to Movant's challenged conviction. On June 3, 2003, Petitioner spent the afternoon drinking beer with friends on the Navajo Reservation in Leuppe, Arizona. (Tr. 152-156[2]) Specifically, Petitioner, Dwayne Manson, Christy Yazzie, and Christy's uncles Ned Tohannie and Stanley Smith spent the afternoon at the home of Christy Yazzie's grandmother, Elmira Tohannie. (Tr. 151-152) Elmira Tohannie lived at Navajo Housing Authority ("NHA") unit 4 with her son, Ned. (Tr. 151-53)

---

[1] Citations to "docket #___" are to documents filed in CR-03-681-PCT-DGC.

[2] Citations to "Tr." refer to the Reporter's Transcript and will be followed by the relevant page number.

When they ran out of beer, Yazzie, Manson, and Movant drove Movant's Ford pick-up truck to Winslow, Arizona to buy more beer. (Tr. 153, 313) The round trip took nearly two hours. (Tr. 155) Upon their return, Yazzie, Manson, and Movant went to Movant's home, NHA unit 5, and continued drinking. (Tr. 155) Movant's roommate, Terry Russell, was also at the house but remained in his bedroom and did not join the others. (Tr. 234) A little later, Manson and Yazzie left Movant's house and returned to NHA 4 "to drink some more beer." (Tr. 156-57) The driveway of unit 4 is around a corner and approximately 273 feet from the front gate of Movant's home. (Tr. 510) Yazzie and Manson were standing in the driveway of unit 4 when Movant walked up the driveway, walked past Yazzie, and started "punching" Manson in the chest. (Tr. 158, 161, 178) Manson "took off" after Movant to the end of the driveway where he collapsed in a pool of his own blood. (Tr. 161-163, 179) Movant had actually stabbed Manson in the chest. Manson eventually died at the hospital in Winslow, Arizona. (Tr. 310)

Russell testified that some time after Movant, Yazzie, and Manson returned from Winslow, he heard the front door open and close, but still heard music playing. (Tr. 235, 11) He then heard Movant yelling and throwing things around the living room area. (Tr. 236-37) Russell heard the front door open and close a second time and then it was quiet. (Tr. 236-37) Shortly thereafter, Russell heard Movant return home. Movant ran into the bedroom "shaking and stuff" and said he had stabbed someone. (Tr. 238) Russell saw blood on Movant's hands. (Tr. 238) Movant, who was "hysterical," ran with Russell to NHA unit 4, where Russell saw Manson lying at the end of the driveway in a pool of blood. (Tr. 239-40)

Movant left the scene and fled in his Ford pick-up truck, which he abandoned approximately a half mile away. (Tr. 241, 313-314, 523) Movant subsequently hitchhiked to Flagstaff, Arizona, and later went to his aunt's home in Tuba City, Arizona. (Tr. 515-17, 523-24)

The Federal Bureau of Investigation ("FBI") located Movant on June 9, 2003 at his aunt's house. (Tr. 516-17) That same day, Movant was arrested for murder. (*Id.*)

Based on the foregoing, Movant was charged by criminal complaint with the murder of Dewayne Manson. (docket # 1) He was indicted for murder in the first degree, in violation of 18 U.S.C. § 1153 and § 1111. (docket # 11) Movant proceeded to trial on July 27, 2004. During trial, Movant moved for a mistrial. After an evidentiary hearing, the District Court denied the motion. On July 30, 2004, a jury found Movant guilty of second degree murder, a lesser included offense. (docket # 89) On February 8, 2005, the court sentenced Movant to 160 months imprisonment. (docket # 89)

Movant filed a timely notice of appeal. (docket # 92) On June 15, 2006, the Ninth Circuit Court of Appeals affirmed Movant's conviction. Movant filed a motion for writ of certiorari to the United States Supreme Court which was denied on October 30, 2006.

Thereafter, Movant filed a timely motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket # 121) raising the following claims:

(1) Trial counsel was ineffective in failing to:

    (a) obtain independent DNA testing of the clothes Movant was wearing on the day of the murder;

    (b) obtain independent testing of the driver's side seat and floorboard area of Movant's truck to show no "blood transfer from victim to defendant to vehicle;"

    (c) obtain plaster casts of footprints at the "fight scene" to show that Movant's footprints were not at the scene of the murder;

    (d) interview witnesses to show possible memory problems due to intoxication;

    (e) consult an independent drug expert to explore the effects of intoxication on a witness's memory and perception;

    (f) obtain a polygraph examination of Movant who has "no recollection of stabbing the victim";

    (g) obtain independent testing for fingerprints on the door of Movant's truck where the murder weapon was found;

    (h) obtain an expert to reconstruct the murder;

(2) Appellate counsel was ineffective in failing to research and identify the foregoing instances of ineffective assistance of trial counsel.

(docket # 121)

1  Respondent asserts that Movant's claims lack merit and Movant has not filed a
2 reply.
3 **II.  Analysis**
4  Movant raises several claims of ineffective assistance of trial and appellate
5 counsel.  For the reasons set forth below, the Court finds that these claims lack merit.
6  **A.  Controlling Law**
7  The controlling Supreme Court precedent on claims of ineffective assistance of
8 counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner
9 must show that counsel's performance was objectively deficient and that counsel's deficient
10 performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d
11 1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the
12 wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690. When
13 reviewing counsel's performance, the court engages a strong presumption that counsel
14 rendered adequate assistance and exercised reasonable professional judgment.  *Strickland*,
15 466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be
16 made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of
17 counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the
18 time."  *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely
19 limited."  *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other*
20 *grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial
21 strategy" do not constitute ineffective assistance of counsel.  *Strickland*, 466 U.S. at 689.
22  To establish a Sixth Amendment violation, petitioner must also establish that he
23 suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at
24 691-92; *United States v. Gonzalez-Lopez*, ___U.S.___, 126 S.Ct. 2557, 2563 (2006)(stating
25 that "a violation of the Sixth Amendment right to effective representation is not 'complete'
26 until the defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a
27 "reasonable probability that, but for counsel's unprofessional errors, the result of the
28 proceeding would have been different.  A reasonable probability is a probability sufficient to

- 4 -

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The court may proceed directly to the prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000)(citing *Strickland*, 466 U.S. at 697). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155. The *Strickland* standard applies equally to a defendant who has been "represented by counsel during the plea process and enters his plea upon the advice of counsel . . . ." *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985).

A petitioner claiming ineffective assistance of appellate counsel is entitled to relief only if he satisfies both prongs of the *Strickland* test and shows that the failure to raise a meritorious claim would have resulted in reversal of his conviction. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992). To determine the competency of appellate counsel, it is necessary to consider the merits of the issues not raised on appeal. *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995). Appellate counsel does not provide ineffective assistance by declining to raise an issue that would have been unsuccessful, even if requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Courts have recognized that it is "not particularly good appellate advocacy" to raise numerous weak arguments on appeal. *Smith v. Stewart*, 140 F.3d 1263, 1274 n. 4 (9th Cir. 1998). On habeas review, the court must give "substantial weight" to the trial judge's analysis of a claim of ineffective assistance. *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000).

**B. Ground 1(a) - Investigation of Clothing**

In ground 1(a), Movant argues that trial counsel was ineffective in failing to obtain independent DNA testing of the clothes that Movant wore on the day of the murder. Movant was not arrested until six days after the murder and there is no evidence that Movant's clothing was recovered. (docket # 121, Exh. 2; Tr. 151, 516-17) During trial, defense counsel questioned the criminal investigators regarding their examination of clothing. On cross-examination, John Charles Jones, Special Agent with the FBI, admitted that neither he nor tribal investigator, Brad Jones, had requested a search warrant for

Petitioner's residence. (Tr. 488, 560-61) There is no evidence in the record indicating that investigators recovered the clothes that Movant had worn on the day of the incident. In the pending § 2255 motion, Movant does not discuss whether he had possession of those clothes or whether he ever offered them to defense counsel. Because Movant's clothes were not recovered, Petitioner cannot establish that trial counsel was ineffective in failing to obtain DNA analysis of those clothes. *Strickland*, 466 U.S. at 691-92. Moreover, the record reflects that defense counsel's zealous cross-examination of Agent Jones and Walter Bighorse, Criminal Investigator with the Navajo Department of Public Safety, raised the issue of deficiencies in the investigation of the murder, including the investigators' failure to conduct a more thorough examination into the clothing worn by Movant, the victim, and witnesses on the day of the incident. (Tr. 560-61, 390-91)

### C. Ground 1(b) - Investigation of Movant's Car

In ground 1(b), Movant asserts that counsel was ineffective in failing to obtain independent testing of the driver's side seat and floorboard area of Movant's car to show that there was no "blood transfer from victim to defendant to vehicle." (docket # 121)

Defense counsel has a "duty to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This includes a duty to investigate the defendant's 'most important defense,' . . . and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence on the verdict . . . .However, 'the duty to investigate is not limitless . . . .'" *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001)(citations omitted.) A letter from Movant's counsel dated March 28, 2007, indicates that no blood was found on the driver's side of the truck. (docket # 121, Exh. 2) The record supports this statement. On cross-examination, Criminal Investigator Bighorse testified that no blood was found in Movant's truck. (Tr. 406) The record reflects that no blood was found in the truck, thus, there was no need for counsel to conduct further investigation to establish what was already in the record. Movant had not

established the counsel was deficient in failing to conduct further investigation of Movant's car, accordingly, his claim of ineffective assistance fails. *Strickland*, 466 U.S. at 690.

### D. Ground 1(c) - Investigation of Footprints

Movant next argues that counsel was ineffective for failing to obtain *plaster casts* of footprints at the "fight scene" to establish that Movant's footprints were not present. As an initial matter, the record reflects that the incident occurred on a cement driveway, thus, plaster casts could not have been taken of footprints found on the cement. (Tr. 337, 339, 556-57) Additionally, defense counsel was not appointed until six days after the murder and did not have access to the scene of the incident when it occurred and could not have made plaster casts of any footprints.

The record reflects that defense counsel raised the issue of that quality of the investigation of footprints at the murder scene. During cross-examination of Walter Bighorse, a Criminal Investigator with the Navajo Depart of Public Safety, defense counsel elicited testimony that investigators found footprints in the blood on the driveway and in the dirt. (Tr. 380-81) Bighorse testified that although the footprints were photographed, he never searched for shoes belonging to Petitioner, Terry Russell, or Christy Yazzie. (Tr. 397) He also testified that he did not examine the victim's shoes. (*Id.*)

On cross-examination of Agent John Charles Jones, defense counsel elicited testimony that investigators found a footprint in the blood on the driveway that had a "wavy pattern." (Tr. 563-64) He admitted that investigators did not obtain a search warrant to search Petitioner's residence for a shoe that matched that print. (*Id.*) He further testified that investigators found a "footprint in the kitchen [of Mrs. Tohannie's house] with blood in it." (Tr. 562) The pattern of that print matched a pair of Christy Yazzie's shoes that officers seized. (Tr. 562-63) The "wavy pattern" found on the driveway did not match Yazzie's shoes. (Tr. 563)

In view of the foregoing, Movant fails to establish that counsel's representation fell below an objective standard of reasonableness in failing to make plaster casts of footprints. Counsel conducted a thorough examination of the law enforcement officers

1 regarding their investigation of footprint evidence. The record also established that the
2 footprints were mainly on the cement driveway and, therefore, plaster casts of those prints
3 could not have been made. Petitioner fails to establish either prong of the *Strickland* test
4 with regard to counsel's investigation of footprints.

### E.  Grounds 1(d) and (e) - toxicologist/intoxication of witnesses

In ground 1(e) and 1(d), Movant asserts that counsel was ineffective in failing to interview witnesses regarding their alcohol use on the day of the incident and in failing to hire a toxicologist to testify regarding the effects of intoxication on the witnesses' perception and memory.

As an initial matter, Claim 1(e) claim fails because Petitioner does not identify a specific expert who would have been available to testify at trial and the content of such an expert's testimony. Although Plaintiff claims that defense counsel should have interviewed a forensic toxicologist and presented such an expert as a witness, Plaintiff does not identify a particular forensic toxicologist whose testimony trial counsel should have obtained. Nor has Plaintiff established that a forensic toxicologist would have been available and willing to testify at Petitioner's trial. Petitioner merely speculates that the testimony of an unidentified forensic toxicologist would have supported his defense. In *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001), the Ninth Circuit rejected a similar claim of ineffective assistance based on counsel's failure to obtain an expert. The court explained that:

> Wildman has not shown that his case was prejudiced as a result of not retaining an arson expert. Wildman offered no evidence that an arson expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997)(speculating as to what an expert would say is not enough to establish prejudice.)

*Wildman*, 261 F.3d at 839.

Similar to *Wildman*, Petitioner's claim of ineffective assistance based on counsel's failure to retain a forensic toxicologist fails because Petitioner has neither identified a specific expert who would have testified at trial nor described the testimony that the unidentified forensic toxicologist would have given at trial. *Evans v. Cockrell*, 285 F.3d

- 8 -

370, 377 (5th Cir. 2002)("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative . . . . In addition, for [petitioner] to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.")(citations omitted).  *see also Grisby v. Blodgett,* 130 F.3d 365, 373 (9th Cir. 1997)("Speculation about what an expert could have said is not enough to establish prejudice [under Strickland]"); *United States v. Hardin*, 846 F.2d 1229, 1231-32 (9th Cir. 1988)(rejecting claim of ineffective assistance based on counsel's failure to call a witness who would have taken responsibility for a gun found in defendant's possession because, *inter alia*, "[t]here is no evidence in the record which establishes that Washington would testify in [petitioner's] trial."); *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985)(rejecting claim of ineffective assistance because petitioner did not "identify any witnesses that his counsel should have called that could have been helpful.")

       Additionally, although counsel did not present the testimony of a toxicologist, contrary to Petitioner's assertion, he elicited testimony from the witnesses regarding their intoxication at the time of the incident.   On cross-examination of Christy Yazzie, defense counsel raised the issue of her consumption of alcohol on the day of the incident.  (Tr. 164-203)   Yazzie admitted consuming "five or six cans of beer" between 2:00 and 5:00 p.m. on June 3, 2003.  (Tr. 187, 196, 201-02) She further testified that she probably consumed twelve cans of beer during the course of that entire day.  (Tr. 188-89) Defense counsel also questioned Yazzie about the inconsistencies in her account of the events on June 3, 2003. (Tr. 196-203) Thus, counsel's cross-examination cast doubt on Yazzie's credibility by highlighting her intoxication on the day of the incident and her inconsistent description of the events of June 3, 2003.

       Defense counsel also elicited testimony from FBI Agent Jones regarding inconsistencies in the "stories" Yazzie told Officer Bighorse and Agent Jones.   (Tr. 535-40) Jones also testified that during his 28-year career in law enforcement he had a lot of

experience working in situations where people have been drinking.  (Tr. 548) He testified that alcohol affects people's memory, mind, and senses.  (Tr. 548-49) He also stated that sometimes a witness' "remembrances of the events" are "different than what others witnesses said," sometimes because of alcohol or because of their involvement.  (Tr. 549)

Similarly, on cross-examination of Terry Russell, Movant's roommate, counsel elicited testimony regarding Russell's drinking problem and the fact that he had "several drinks" on the day of the incident.  (Tr. 265, 267) He testified that he "drank three or four cans of Icehouse beer" the evening of June 3, 2003.  (Tr. 268) He also confirmed that Yazzie appeared intoxicated on June 3, 2003.  (Tr. 273)

Additionally, Ned Tohannie, testified that he drank several beers with Yazzie on the morning of June 3, 2003.  (Tr. 594-95)

Although counsel did not present the testimony of a toxicologist regarding the effects of alcohol, he vigorously cross-examined the State's witnesses regarding their consumption of alcohol on the day of the incident.  He also elicited testimony from Agent Jones regarding alcohol's impact on the memory, mind, and the senses.  In view of the foregoing testimony, the testimony of an forensic toxicologist regarding the witnesses' intoxication would have been unnecessary as it would not have added any new information. The "effects of alcohol intoxication and alcoholism are within the common knowledge and experience of  the jury, and therefore, no expert testimony is needed to assist the trier of fact."  *Schurz v. Schriro*, No. CV-97-80-PHX-EHC, 2007 WL 2808220, * 9 (D. Ariz., Sept. 25, 2007); *Salem v United States Lines Co.*, 370 U.S. 31, 35 (1962).

### F.  Ground 1(f) - polygraph examination

In ground 1(f), Petitioner asserts that counsel was ineffective in failing to obtain a polygraph examination of Movant.  Movant claimed that he lacked any recollection of the events on the day of the murder.  Agent Jones testified that when he interviewed Movant, who had waived his *Miranda* rights, on June 9, 2007, Movant stated that he did not remember anything after drinking a forty ounce bottle of beer during the trip home from Winslow.  (Tr. 521) He claimed that he "blacked out."  (*Id.*)   Movant does not explain how

1  a polygraph examination would have bolstered his defense.  Movant merely speculates that a
2  polygraph would have produced favorable evidence. Movant's speculation does not support
3  a claim for habeas corpus relief.  *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).
4  Moreover, polygraph examinations are inadmissible at trial absent some sort of stipulation
5  by the parties.  *Brown v. Darcy*, 783 F.2d 1389, 1391 (9th Cir. 1986)(barring admission of
6  unstipulated polygraph evidence). Movant does not even argue that the prosecution would
7  have stipulated to the admission of a polygraph.  Movant fails to establish that counsel was
8  ineffective in failing to obtain a polygraph examination of Movant.  Movant's speculation
9  about such evidence neither demonstrates prejudice nor warrants habeas relief.  *Villafuerte v.*
10 *Stewart*, 111 F.3d 616, 632 (9th Cir. 1997); *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir.
11 1996); *Hendricks v. Coleman*, 70 F.3d 1032, 1042 (9th Cir. 1995)

**G.  Ground 1(g) - testing of truck**

13          In ground 1(g), Movant argues that trial counsel was ineffective in failing to
14 retain an expert to test the area of the truck where the murder weapon was found.

15          As an initial matter, this claim fails because Movant has neither identified a
16 specific expert who would have testified at trial nor described the testimony that the
17 unidentified expert would have given at trial.  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir.
18 2002)("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review
19 because allegations of what the witness would have testified are largely speculative . . . . In
20 addition, for [petitioner] to demonstrate the requisite *Strickland* prejudice, [he] must show
21 not only that [the] testimony would have been favorable, but also that the witness would
22 have testified at trial.")(citations omitted)

23          Agent Jones testified that he could not recall whether Movant's truck was dusted
24 for fingerprints. (Tr. 564)   However, Jones testified that Jonathan Leonard, the evidence
25 technician for the Dilkon District, had searched and photographed the truck.  (*Id.*)  Jones
26 stated that if Leonard had "found things of . . . value" he would have brought them to Jones'
27 attention.  (*Id.*)  The evidence showed that the murder weapon, a knife, was found in the
28

- 11 -

passenger door of Movant's truck. Even if an expert discovered another person's fingerprints on the passenger door of Movant's truck, such evidence would not exculpate Movant. An eyewitness, Christy Yazzie, testified that Movant stabbed the victim. Even if counsel's performance was deficient in failing to conduct further investigation of the truck, Movant cannot establish that this deficiency resulted in prejudice to Movant. Accordingly, this claim fails. *Strickland*, 466 U.S. at 687.

### H.  Ground 1(h) - reconstruction of murder

Movant further argues that counsel was ineffective in failing to obtain an expert to reconstruct the murder. Petitioner's claim of ineffective assistance based on counsel's failure to retain an expert to reconstruct the murder fails because Movant has neither identified a specific expert who would have testified at trial nor described the testimony that the unidentified expert would have given at trial. *Evans*, 285 F.3d at 377("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative . . . . In addition, for [petitioner] to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.")(citations omitted)

Additionally, there was an eyewitness to the murder who testified about how the murder happened. Movant does not explain how reconstructing the murder would have bolstered his defense. "When . . . defendant fails to state what additional information would be gained by the discovery he or she now claims was necessary, an ineffective assistance claim fails." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001)(citation omitted).

### I.  Ground 2 - appellate counsel

In ground 2, Movant claims that appellate counsel was ineffective in failing to investigate and raise on appeal the foregoing instances of ineffective assistance of counsel.

A petitioner claiming ineffective assistance of appellate counsel is entitled to relief only if he satisfies both prongs of the *Strickland* test and shows that the failure to raise

a meritorious claim would have resulted in reversal of his conviction. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992). To determine the competency of appellate counsel, it is necessary to consider the merits of the issues not raised on appeal. *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995). Appellate counsel does not provide ineffective assistance by declining to raise an issue that would have been unsuccessful, even if requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Courts have recognized that it is "not particularly good appellate advocacy" to raise numerous weak arguments on appeal. *Smith v. Stewart*, 140 F.3d 1263, 1274 n. 4 (9th Cir. 1998). On habeas review, the court must give "substantial weight" to the trial judge's analysis of a claim of ineffective assistance. *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000).

Even if appellate counsel's performance was deficient in failing to raise the foregoing instances of ineffective assistance on appeal, Movant has not established prejudice. As discussed above, none of Movant's claims on ineffective assistance of counsel are meritorious. Because appellate counsel does not provide ineffective assistance by declining to raise issues that would have been unsuccessful, Movant's claim fails. *Jones*, 463 U.S. at 751.

**III. Conclusion**

Based on the foregoing, the Court finds that Movant's claims fail on the merits. Accordingly,

IT IS HEREBY RECOMMENDED that Movant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (docket # 121) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within

1  which to file a response to the objections. Failure to file timely objections to the Magistrate
2  Judge's Report and Recommendation may result in the acceptance of the Report and
3  Recommendation by the District Court without further review. *See United States v. Reyna-*
4  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual
5  determinations of the Magistrate Judge will be considered a waiver of a party's right to
6  appellate review of the findings of fact in an order or judgment entered pursuant to the
7  Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 5th day of November, 2007.

*[signature]*
Lawrence O. Anderson
United States Magistrate Judge