**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ira Riggs,              ) | No.   CR03-0681 PCT DGC |
|                         ) |        CV07-8005 PCT DGC (LOA) |
| Movant,                 ) | |
| vs.                     ) | **ORDER** |
| United States of America, ) | |
| Respondent.             ) | |

Movant Ira Riggs has filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. Dkt. #121. United States Magistrate Judge Lawrence O. Anderson's has prepared a Report and Recommendation ("R&R"). Dkt. #127.[1] The R&R recommends that the motion be denied on the merits. Dkt. #127. For the reasons set forth below, the Court will adopt the R&R and deny the motion.

**I.   Factual Background.**

Movant, Dwayne Manson, Christy Yazzie, and others were drinking beer together on the afternoon of June 3, 2003 at Navajo Housing Authority ("NHA") unit 4. Dkt. #127 at 1. Movant, Manson, and Yazzie then went to Movant's home, NHA unit 5, where the three continued to drink. *Id*. at 2. Manson and Yazzie subsequently returned to NHA unit 4 to drink more beer. *Id*. Manson and Yazzie were in the driveway of NHA unit 4 when Movant

---

[1] The docket numbers refer to documents filed under case number CR03-681 PCT DGC.

walked up, started punching Manson in the chest, and then stabbed Manson in the chest. *Id*. Manson started to chase Movant, but collapsed. *Id*. at 2.

Movant returned home and was observed by his roommate, Terry Russell, to be shaking. *Id*. Movant told Russell that he had stabbed someone, and Russell saw blood on Movant's hands. *Id*. Movant and Russell ran to NHA unit 4, where Russell saw Manson lying in a pool of blood. *Id*. Movant fled the scene in his Ford pick-up truck, which he abandoned approximately one half mile away. *Id*. Movant hitchhiked to Flagstaff, Arizona, and later made his way to his aunt's home in Tuba City, Arizona. *Id*. Federal agents located Movant at his aunt's home several days later. *Id*. Movant was arrested for murder. *Id*.

## II. **Procedural Background.**

On July 30, 2004, Movant was found guilty by a jury of second-degree murder, and on February 8, 2005, was sentenced to 160 months in prison. *Id*. at 3. Movant's conviction was affirmed by the Ninth Circuit Court of Appeals on June 15, 2006. *Id*. Movant filed a writ of certiorari to the Supreme Court, which was denied on October 30, 2006. *Id*.

Movant moves to vacate his conviction on the grounds that he received ineffective assistance from his trial and appellate counsel. Dkt. #121. Movant generally claims that his trial counsel did not properly investigate evidence, obtain expert testimony, or communicate with Movant. *See id*. Movant argues that his appellate counsel was ineffective because he did not inform Movant of his Sixth Amendment rights, or raise the ineffective assistance of trial counsel on appeal. *See id*.

Judge Anderson concluded that each of Movant's claims lacks merit under the analysis for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Dkt. #127. Movant filed a series of objections to the R&R. Dkt. #133. He asks the Court to reject the R&R and seeks an "evidentiary hearing to develop the factual record on the issue of ineffective assistance of counsel." *Id*. at 13.

## III. **Legal Standard.**

*Strickland* provides the general standard of review for a defendant's claim that a conviction should be set aside for ineffective assistance of counsel. A defendant alleging

- 2 -

ineffective assistance must show that counsel's performance was deficient and that this deficient performance caused prejudice to the defendant. *Id*. at 687. To establish deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. To establish prejudice, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The Court is to undertake a *de novo* review of those portions of the R&R to which specific objections are made. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985). The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* 28 U.S.C. § 636(b)(1). In the ineffective assistance of counsel context, a court's "[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *U.S. v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986) (citation omitted). Moreover, courts are reminded to take "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

**IV.   Analysis.**

The Court will now turn to each of Movant's complaints to determine whether Movant has established that his counsel's performance was deficient, and that this deficient performance prejudiced his defense. *See id*. at 687.

    **A.   Investigation of Movant's Clothing.**

Movant alleges that his trial counsel did not test the clothes Movant wore on June 3, 2003 for blood or DNA. Dkt. #121 at 5. Judge Anderson noted, however, that "[b]ecause Movant's clothes were not recovered, Movant cannot establish that trial counsel was ineffective in failing to obtain DNA analysis of those clothes." Dkt. #127 at 6 (citation

1  omitted). Judge Anderson additionally stated that Movant's trial counsel "raised the issues
2  of deficiencies in the investigation of the murder, including the investigators' failure to
3  conduct a more thorough examination into the clothing worn by Movant, the victim, and
4  witnesses on the day of the incident." *Id*.

5  In his objection, Movant argues for the first time that his "trial counsel never asked
6  him for the clothes he was wearing the night of the murder, or [he] would have produced
7  them." Dkt. #133 at 3. The Ninth Circuit has held "'categorically that an unsuccessful party
8  is not entitled as of right to *de novo* review by the [district] judge of an argument never
9  seasonably raised before the magistrate.'" *United States v. Howell*, 231 F.3d 615, 621 (9th
10 Cir. 2000) (citation omitted). Rather, the district judge has discretion, but is not required, to
11 consider evidence and arguments raised for the first time in an objection to the magistrate's
12 R&R. *Id.* at 621-22. Even if Movant's new argument is considered, Movant does not
13 explain where the clothes were located, whether they had been washed or worn since the
14 events in question, and how testing of them for DNA would have proved his innocence.
15 Movant acknowledges that his trial counsel questioned the investigators regarding his
16 clothing and fails to describe in what aspects of the cross-examination was deficient. The
17 Court is not persuaded that the lack of DNA testing of Movant's clothing is evidence of
18 ineffective representation.

19 **B.  Investigation of Movant's Truck.**

20 Movant complains of his trial counsel's failure to test his Ford pick-up truck's driver's
21 seat or floorboard to show there was no transfer of blood from the victim to Movant's truck.
22 Dkt. #121 at 5. But "the record reflects that no blood was found in the truck, thus, there was
23 no need for counsel to conduct further investigation to establish what was already in the
24 record." Dkt. #127 at 6. In his objection, Movant admits that "the record reflects [that] no
25 blood was found in Movant's truck," but contends that an expert could have testified "that
26 Movant could not have had blood on his hands and blood on his shoe [as eyewitness
27 testimony claimed] without transferring blood to his truck if he had immediately gotten in
28 his truck and drove away as the testimony indicated." Dkt. #133 at 5. Movant has not

identified an expert who would have provided this testimony. Accordingly, this ground is insufficient to establish ineffective assistance of counsel. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) ("[Petitioner] offered no evidence that an . . . expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice.").[2]

### C. Investigation of Movant's Shoe Prints.

Movant states that his trial counsel neglected to investigate Movant's shoe prints at the murder scene. Dkt. #121 at 5-6. In response, Judge Anderson determined that "plaster casts could not have been taken of footprints found on the cement [driveway where the incident occurred]," and that in any case trial counsel "conducted a thorough examination of law enforcement officers regarding their investigation of footprint evidence." Dkt. #127 at 7-8. In his objection, Movant argues that while plaster casts could not have been taken, his shoe prints could prove that he was not involved in the stabbing and, as with his first complaint, he "could have produced the shoes he was wearing [the day of the incident] which could have been verified by the witnesses." Dkt. #133 at 6.

Movant does not establish that counsel's failure to take independent shoe prints prejudiced his defense. For example, Movant does not deny that he was at the murder scene around the time of the stabbing, nor that the shoe prints taken by the officers were mistakenly connected to Movant. Moreover, he does not explain how counsel's questioning of the officers regarding the shoe prints was deficient or how independent testing of the shoe prints would have yielded materially different evidence than what was discussed in the course of

---

[2]Movant states that "due to the death of Movant's mother last week, the family is unable to help in retaining expert witnesses at this time." Dkt. #133 at 2. The Court notes that Movant had approximately five months following the filing of the R&R within which to identify expert witnesses who would have testified on his behalf. While Movant's family was unable to assist him for about a week before he filed his objections, Movant does not explain why he was unable to identify expert witnesses during the preceding weeks and months.

the cross-examinations or in the trial more generally. Movant has not met his burden of showing, with respect to the shoe prints, that trial counsel's representation was ineffective.

### D. Effect of Intoxication on Witnesses.

Movant's motion also charges his trial counsel with failing to interview the witnesses to uncover any memory problems they may have experienced due to their alcohol consumption on the day of the incident. Dkt. #121 at 6. He further contends that his trial counsel did not obtain an expert witness to testify about the effects of alcohol consumption on an individual's memory. *Id.* Judge Anderson found that "Petitioner has neither identified a specific expert who would have testified at trial nor described the testimony that the unidentified forensic toxicologist would have given at trial," "[counsel] elicited testimony from the witnesses regarding their intoxication at the time of the incident," and "counsel also elicited testimony from [an FBI agent] regarding inconsistencies in the 'stories' Yazzie told [an officer and the agent]." Dkt. #127 at 8-9. Judge Anderson also noted that "the effects of alcohol intoxication and alcoholism are within the common knowledge and experience of the jury, and therefore, no expert testimony is needed to assist the trier of fact." *Id*. at 10 (quoting *Schurz v. Schriro*, No. CV-97-80-PHX-EHC, 2007 WL 2808220, at \*9 (D. Ariz. Sept. 25, 2007)).

In his objection to the R&R, Movant argues that a toxicologist's testimony would have been "relevant and helpful." Dkt. #133 at 6. But to show that the failure of trial counsel to obtain such testimony was prejudicial, Movant must demonstrate that "but for" this error the result of his trial would have been different. *Strickland*, 466 U.S. at 694. Testimony that may have been relevant or helpful falls well below this threshold.

Movant contends that he was prejudiced in that expert testimony regarding his intoxication may have negated the intent required to support a charge of second-degree murder. Dkt. #133 at 7. As the effects of alcohol are within the realm of the jury's common knowledge and experience, however, "trial courts are permitted to preclude psychiatric testimony relating to the effect of alcohol upon the ability to form specific intent, even where the intoxication is related to chronic alcoholism and there is evidence the accused may have

- 6 -

1 suffered a black-out at the time of the crime." *Schurz*, 2007 WL 2808220, at *9 (internal 2 quotes and citation omitted). Movant has not shown that defense counsel's failure to secure 3 such expert testimony was substandard or prejudicial.

4        **E.     Use of Polygraph Examination.**

5        Movant's motion contends that trial counsel should have conducted a polygraph test 6 of Movant that could have been used as part of plea negotiations. Dkt. #121 at 8. The R&R 7 stated, however, that Movant failed to explain how a polygraph examination would have 8 bolstered his defense, as Movant claims that he "blacked out." Dkt. #127 at 10. Moreover, 9 such examinations "are inadmissible absent some sort of stipulation by the parties" and 10 Movant "does not even argue that the prosecution would have stipulated to the admission of 11 a polygraph." *Id.* at 11. In his objection, Movant admits that he "does not remember what 12 happened and polygraph tests are inadmissible [at trial]," but argues that a polygraph 13 examination "could have been helpful in securing a plea for voluntary manslaughter." Dkt. 14 #133 at 9. Again, whether certain evidence would have been "helpful" is insufficient to meet 15 the high standard of proving that the evidence would have changed the result of the trial. 16 *Strickland*, 466 U.S. at 694. Moreover, whether the plea would have been available in 17 consideration of a polygraph examination is purely speculative.

18       **F.     Investigation of the Truck's Door Panel.**

19       Movant claims that his trial counsel should have tested for finger prints or other 20 evidence to prove that someone other than Movant put the murder weapon, a knife, in the 21 door panel of his truck. Dkt. #121 at 8. The R&R rejects this argument, noting that 22 "Movant has neither identified a specific expert who would have testified at trial [regarding 23 the fingerprints of the area within the truck where the knife was found] nor described the 24 testimony that the unidentified expert would have given at trial." Dkt. #127 at 11 (citation 25 omitted). "Even if an expert discovered another person's fingerprints on the passenger door 26 of Movant's truck, such evidence would not exculpate Movant." Dkt. #127 at 12. In his 27 objection, Movant concedes that this argument as to why his trial counsel was ineffective "is 28 not a relevant issue." Dkt. #133 at 10.

### G. Reconstruction of the Incident.

Movant states that his trial counsel should have obtained an expert to reconstruct the incident to determine whether Movant could have stabbed Manson given their relative size, height, and positioning. Dkt. #121 at 8. Judge Anderson disagreed that trial counsel's failure to reconstruct the incident serves as a basis for a finding of ineffective representation. In particular, "Movant has neither identified a specific expert who would have testified at trial [regarding a reconstructed murder] nor described the testimony that the unidentified expert would have given at trial." Dkt. #127 at 12 (citation omitted). Moreover, "Movant does not explain how reconstructing the murder would have bolstered his defense" in light of the fact that "there was an eyewitness to the murder who testified about how the murder happened." *Id.* In his objection, Movant argues that "[a]n expert [regarding a reconstruction of the incident] could have provided testimony that the assailant could not have been the Movant, as the eyewitnesses testified." Dkt. #133. at 10-11. Movant still has not identified an expert who would have testified for him. *See Wildman*, 261 F.3d at 839. In addition, Movant's position that such expert testimony would have helped establish that he did not stab Manson is purely speculative.

### H. Failure to Discuss the Foregoing with Movant.

Movant alleges that his trial counsel neglected to discuss the previous eight items with him. Dkt. #121 at 8.[3] Judge Anderson does not explicitly mention this argument, but he impliedly rejected it because, according to the R&R, none of the preceding eight complaints gives rise to a basis for relief. In his objection, Movant states that "[c]ounsel has a duty to consult with the defendant on important decisions and has a duty to make reasonable investigations." Dkt. #133 at 11 (citation omitted). As the Court finds that none of the complaints cited by Movant establishes that trial counsel provided ineffective assistance

---

[3]Movant's motion states that counsel "failed to discuss 1 to 7 with Movant." Dkt. #121 at 8. Movant likely means 1 through 8 because he mistakenly labeled this complaint as "8," though it actually is his 9th complaint. *Id.*

- 8 -

1  under *Strickland*, the Court concludes that trial counsel committed no cognizable error in not
2  raising the foregoing issues with Movant.

3  **I.     Ineffectiveness of Appellate Counsel.**

4  Movant claims his appellate counsel was ineffective because the attorney did not
5  "research, identify and then discuss with [Movant] the 6th Amendment," or argue the
6  ineffective assistance of trial counsel. Dkt. #121 at 9. Judge Anderson concluded, however,
7  that "[e]ven if appellate counsel's performance was deficient in failing to raise the foregoing
8  instances of ineffective counsel on appeal, Movant has not established prejudice." Dkt. #127
9  at 13. In his objection, Movant argues that counsel "was ineffective for failing to raise
10 meritorious claim[s] of ineffectiveness of trial counsel[.]" Dkt. #133 at 12 (citation omitted).
11 As explained above, however, none of Movant's complaints regarding trial counsel's
12 representation have merit under *Strickland*. Appellate counsel therefore did not provide
13 ineffective representation by failing to raise them on appeal.

14 **IT IS ORDERED:**

15 1.  United States Magistrate Judge Lawrence O. Anderson's Report and
16     Recommendation (Dkt. #127) is **adopted**.
17 2.  Movant's motion to vacate, set aside, or correct sentence (Dkt. #121) is
18     **denied**.
19 3.  The Clerk of court is directed to terminate this action.

20 DATED this 24th day of March, 2008.

David G. Campbell
United States District Judge